FILED
2019 Mar-18 PM 12:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CHARLENIA PITTS,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**BIRMINGHAM-JEFFERSON COUNTY** )<br>**TRANSIT AUTHORITY,** )<br>)<br>**Defendant.** ) | Case No. 2:18-CV-690-KOB |

## MEMORANDUM OPINION

Defendant Birmingham-Jefferson County Transit Authority offered Plaintiff Charlenia Pitts employment as a bus operator on February 2, 2017, and she accepted on February 13. By March 27, the relationship had already soured. Ms. Pitts filed this lawsuit alleging that BJCTA's violations of federal employment laws are to blame. (Doc. 1).

This matter now comes before the court on "Defendant Birmingham-Jefferson County Transit Authority's Motion for Summary Judgment." (Docs. 6; *see also* Doc. 7). In its motion, BJCTA asks this court to enter summary judgment against Ms. Pitts' claims under the Americans with Disabilities Act and the Title VII anti-retaliation provision. For the reasons stated below, this court will GRANT Defendant's motion and will ENTER JUDGMENT for Defendant BJCTA and against Plaintiff Pitts.

**I. Factual Background**

Plaintiff Charlenia Pitts applied for a job with Defendant BJCTA on December 9, 2016. (Doc. 7-2). BJCTA offered her a job as a "Bus operator / Paratransit" on February 2, 2017. (Doc. 7-1).

Ms. Pitts underwent the required medical examination on February 13. (Doc. 7-6). As part of the medical examination, Ms. Pitts disclosed that she had had a "car accident resulting in back problems/pain in the past," but the physician noted that her "Back/Spine" were "Normal." (Doc. 7-6 at 3–4). Ms. Pitts alleges in her complaint that she discussed her previous back injury with the examining physician but does not allege any specifics about that conversation.

Ms. Pitts accepted the job as Bus operator / Paratransit the same day as the physical examination. (Doc. 7-1). She signed a document conspicuously titled "EMPLOYEE RECEIPT AND ACKNOWLEDGEMENT," (doc. 7-3). By virtue of signing the acknowledgement form, Ms. Pitts indicated she understood and acknowledged that she had received a copy and understood the contents of the job description and that she was willing and able to meet all the job requirements and perform all aspects of the job. (Doc. 7-3). The official job description for a Bus operator / Paratransit clearly states that the position "requires ability to lift, push, pull, assist and secure wheelchair passengers and a minimum 50lbs." (Doc. 7-4 at 4). Ms. Pitts alleges that she "shared [with BJCTA] that [she] was not able to lift 50lbs at the onset of prescreening interviewing." (Doc. 1 at 5).

Ms. Pitts started working for BJCTA on February 20, 2017. Neither her complaint nor her EEOC charge specifies the date she claims to have realized the full extent of her job duties, but upon learning that she "would have to push wheelchairs, and sometimes lift people, [she] requested a reasonable accommodation to transfer to a fixed route that did not require [her] to do those things." (Doc. 1 at 8). BJCTA denied the transfer request. (*Id.*).

Ms. Pitts alleges that in late March,[1] "a large person without an assistant needed help adjusting her position in her wheelchair and [Ms. Pitts] was unable to help." (Doc. 1 at 8).

---

[1] Ms. Pitts' EEOC charge alleges the event happened on April 3, but her complaint and the record indicate that she resigned on March 27. The court assumes the event happened on or just before March 27.

Instead of providing her an accommodation, Ms. Pitts alleges BJCTA offered her an ultimatum—resign or accept termination. (Doc. 1 at 5). She chose the former but has since characterized BJCTA's actions as amounting to constructive discharge. (Doc. 1 at 8).

Ms. Pitts timely filed her charge of discrimination with the EEOC, alleging disability discrimination, and received her right-to-sue letter on February 13, 2018. (Doc. 1 at 8). Proceeding pro se, she then timely filed the action now before the court on May 3, 2018, alleging wrongful termination, failure to accommodate her disability, and retaliation. (Doc. 1 at 4).

Defendant BJCTA moved for summary judgment before the case was reassigned to the undersigned. (Doc. 6). Magistrate Judge T. Michael Putnam ordered Ms. Pitts' response, attaching the Northern District of Alabama's Rule 56 Notice and Explanation. (Doc. 8). Ms. Pitts subsequently moved for an extension of time to file her response, (doc. 10), which Judge Putnam granted, allowing Ms. Pitts an additional month to respond, (doc. 11). But Ms. Pitts never filed any response.

**II. Standard of Review**

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Inferences can create genuine issues of material fact. *Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial.*'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the non-moving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d

1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

**III. Discussion**

Ms. Pitts brings three distinct claims: two for discrimination under the ADA (failure to accommodate her disability and discriminatory termination due to her disability) and one for retaliation under 42 U.S.C. § 2000e-3(a). The court first addresses Ms. Pitts' claims under the ADA and then addresses her claims under Title VII anti-retaliation provision.

*A. ADA Claims*

When bringing a claim under the ADA, a plaintiff must establish a *prima facie* case of disability discrimination to defeat a motion for summary judgment. The plaintiff, who must have been "disabled" but "qualified" at the relevant time, must show that her employer subjected her to unlawful discrimination because of her disability. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001); *see also* 42 U.S.C. § 12112(a).

First, to establish a disability, a plaintiff must show that she has a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or be "regarded as" having such an impairment. 42 U.S.C. § 12102(1).

Here, Defendant argues that Ms. Pitts failed to provide any evidence that she suffers from a disability as defined by the ADA. (Doc. 7 at 8). As Defendant points out, the record shows that Ms. Pitts signed a statement acknowledging that she was "willing and able to meet all job requirements and perform all aspects of the job," including being able to lift 50 pounds, the task she would later argue her disability prevented her from doing. (*See* Doc. 7-3). Additionally, Ms. Pitts underwent a physical examination after she received her job offer, and the examiner

determined that Ms. Pitts' "Back/Spine" were "normal." (Doc. 7-6 at 4). But the record also indicates that Ms. Pitts had a car accident that resulted in "back problems/pain *in the past*." (Doc. 7-6 at 3) (emphasis added). The record remains sparse on the presence or extent of Ms. Pitts' disability—no expert testimony; no specialist's examination; and no information about the car accident that resulted in her injury. Ms. Pitts has only provided conclusory allegations in her complaint that she suffers from a disability, but no substantive evidence to contradict the physical. Because Ms. Pitts failed to produce any evidence tending to show that she actually suffers from a disability as defined by the ADA, she has failed to establish the first element of her *prima facie* case of discrimination under the ADA.

Even if Ms. Pitts had established that she is disabled, the second element of her *prima facie* case requires that she be a qualified individual under the ADA. That means she must be able to perform the essential job functions with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526-27 (11th Cir. 1997). If a plaintiff cannot show her ability to perform her essential job functions even with a reasonable accommodation, then her employer is entitled to summary judgment. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000).

Under the ADA, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Also, when "the reason the position exists is to perform the function," that function is "essential." *Holbrook*, 112 F.3d at 1526 (citing 29 C.F.R. § 1630.2(n)(2)(i)–(iii)).

Ms. Pitts applied for a job as a paratransit bus operator. Defendant BJCTA includes assisting handicapped passengers "in boarding, riding and alighting in a safe manner" as an essential duty of that job. BJCTA's paratransit system exists to provide handicapped passengers transportation in and around Birmingham, so Ms. Pitts' job as operator was to assist these passengers by providing "safe and efficient operational service." (Doc. 7-4 at 2). The job description specifically highlights the physical demands of lifting, pushing, pulling, assisting, and securing wheelchair passengers, requiring the operator to be able to lift, push, or pull 50 pounds. (Doc. 7-4 at 4). The court concludes that helping passengers in wheelchairs is an essential function of being a paratransit bus operator because the reason the position exists is to transport handicapped passengers in BJCTA buses and that function requires assisting those passengers board and de-board when necessary.

But if Ms. Pitts can show that she would be able to fulfill her essential tasks with reasonable accommodation, she can still establish that she was "qualified" for the position. 42 U.S.C. § 12111(8); *Earl*, 207 F.3d at 1367. The record indicates that Ms. Pitts requested as her "reasonable accommodation" that she be transferred to a "fixed route that did not require" her to assist passengers in wheelchairs. (Doc. 1 at 8). The ADA provides that reasonable accommodation may include "reassignment to a vacant position." § 12111(9)(B). But Ms. Pitts has not provided any evidence that a vacant position on a "fixed route" existed when she made her request. Even if evidence of such a vacancy did exist, the court doubts that reassignment in this circumstance would be a reasonable accommodation, because Ms. Pitts made the request so soon after accepting her position as a paratransit bus operator, a position she acknowledged she understood entailed assisting passengers in wheelchairs. So the court concludes that Ms. Pitts has also failed to establish herself as a qualified individual under the ADA.

Assuming Ms. Pitts could establish the first two elements of her *prima facie* discrimination claim against BJCTA, she fails to establish the final element as well. As the third and final element of a *prima facie* discrimination case under the ADA, a plaintiff must show her employer unlawfully discriminated against her because of her disability. 42 U.S.C. § 12112(a). Ms. Pitts alleges that BJCTA unlawfully discriminated against her by failing to provide her a reasonable accommodation and by firing her. *See* § 12112(b)(5)(A); § 12112(a).

Ms. Pitts alleges that BJCTA failed to provide her a reasonable accommodation when it declined to transfer her to a fixed route that did not require assisting passengers in wheelchairs as an essential duty. As noted above, Ms. Pitts' argument that BJCTA's failure to reassign her constituted a failure to reasonably accommodate her disability must fail because she has not provided any evidence that a vacant position existed at the time she requested transfer. Ms. Pitts does not suggest any other accommodation, but this court notes that any accommodation requiring BJCTA to "reallocate essential functions," such as assisting handicapped passengers on and off a bus, are not reasonable. *Holbrook*, 112 F.3d at 1527–28. So Ms. Pitts has failed to establish that BJCTA did not reasonably accommodate her.

Ms. Pitts also alleges BJCTA discriminated against her by terminating her. (Doc. 1 at 4). This allegation conflicts with her signed resignation letter in which she indicated she resigned "for personal reasons." (Doc. 1 at 13). But the record also includes a "Notice of Disciplinary Action" from March 27, 2017, in which BJCTA indicated its intent to terminate Ms. Pitts for "her refusal to perform necessary duties." (Doc. 1 at 12). Ms. Pitts also alleged in her EEOC charge that BJCTA "constructively discharged" her by forcing her to make a quick decision between resigning or being fired, foreclosing future employment with BJCTA. (Doc. 1 at 8). She chose the former but now brings this suit for discriminatory termination.

BJCTA's ultimatum to Ms. Pitts, if proven, could constitute constructive discharge. To prove constructive discharge, an employee must show that her working conditions were "so difficult . . . that a reasonable person would have felt compelled to resign." *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1161 n. 30 (11th Cir. 2002) (quoting *Hill v. Winn–Dixie Stores, Inc.* 934 F.2d 1518, 1527 (11th Cir. 1991)). Typically, "employee resignations are presumed to be voluntary" unless the employee comes forward with sufficient evidence to establish that the resignation was involuntarily extracted. *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) (quoting *Christie v. United States*, 518 F.2d 584, 587, 207 Ct. Cl. 333, 338 (1975)).

The two situations in which a court will deem an employee's resignation voluntary are "(1) where the employer forces the resignation by coercion or duress . . . or (2) where the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee." *Id.*, at 1568. Ms. Pitts has not alleged any deception, so her claim for constructive discharge would rely on the fact-intensive inquiry of whether BJCTA's ultimatum constituted coercion or duress. But because this court's ruling on BJCTA's motion for summary judgment does not depend on its deciding if the ultimatum constituted constructive discharge, the court declines to do so.

Assuming BJCTA's ultimatum to Ms. Pitts did constitute a constructive discharge, Ms. Pitts has still failed to show that her termination was *because of any disability*. A plaintiff "may present direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude. Or, in the absence of direct evidence of discrimination, he may rely on the combination of factors set forth in *McDonnell-Douglas Corp. v. Green* . . . ." *Hill v. MARTA*, 841 F.2d 1533, 1539 (11th Cir. 1988); *see also Giraldo v. Miami Dade College*,

739 F. App'x 572, 574 (11th Cir. 2018) ("We likewise analyze ADA discrimination claims under the *McDonnell Douglas* burden-shifting framework.").

The only direct evidence of BJCTA's rationale for terminating Ms. Pitts does not support discriminatory intent. (*See* Doc. 1 at 12) ("Multiple instructors have documented [Ms. Pitts'] refusal to perform neccessary [sic] duties. It has been noted that she is in violation of a Class A infraction (10.3.2.1-a) which is a terminable offense."). Ms. Pitts has also failed to identify any circumstantial evidence or any comparators from which this court could even infer discriminatory intent.

Ms. Pitts did not respond to BJCTA's motion for summary judgment, and this court will not make arguments on her behalf. But in an effort to be thorough, the court notes the troubling similarities between firing someone *because* they cannot lift 50 pounds and firing someone *because* she has a disability that makes it impossible for her to lift 50 pounds. The defendant's opportunity in the *McDonnell Douglas* framework to show that it terminated the employee for a non-discriminatory reason allays that concern. "Once the plaintiff has made out the elements of the *prima facie* case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action. If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767–68 (11th Cir. 2005) (citations omitted).

So, even if Ms. Pitts could show with circumstantial evidence that BJCTA fired her because of her disability, BJCTA's stated rationale of firing her for unwillingness or an inability to carry out essential functions of her position constitutes a legitimate non-discriminatory reason.

The burden would then shift back to Ms. Pitts to show that this proffered reason is pretextual. Ms. Pitts has not even attempted to do so.

Because Ms. Pitts failed to establish her *prima facie* case, the court will GRANT BJCTA's motion for summary judgment on all of Ms. Pitts' claims arising under the ADA.

*B. Title VII Retaliation Claim*

Title VII prohibits employers from retaliating against an employee "because [she] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. §2000e-3(a). Title VII retaliation claims based on circumstantial evidence are also governed by the *McDonnell Douglas* framework. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). A plaintiff can establish a *prima facie* case of retaliation by showing that "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Once the plaintiff meets this burden, the employer has an opportunity to articulate a legitimate non-retaliatory reason for its employment action, which the plaintiff can rebut with evidence of pretext. *Brown*, 597 F.3d at 1181–82.

Ms. Pitts' complaint does not clearly articulate the protected activity for which BJCTA allegedly retaliated against her, but the court construes the complaint as alleging the activity to be her expressing "concern for [her] safety in pushing and pulling on manual wheelchairs" and her apparent refusal to perform those job duties when BJCTA denied her transfer request. (Doc. 1 at 5, 12). These actions constitute the only activity that preceded her alleged termination. Construed as favorably for Ms. Pitts as possible, her expressing safety concerns and refusing to

work could be considered opposition to BJCTA's denying her transfer request, something Ms. Pitts previously alleged was "an unlawful employment practice."

As noted above, this court has determined that BJCTA's denying Ms. Pitts' transfer request was not "an unlawful employment practice." But the Eleventh Circuit does not require that "the underlying discriminatory conduct that [the employee] opposed was actually unlawful." *Little v. United Techs.*, 103 F.3d 956, 960 (11th Cir. 1997). Rather, the employee must "show that [she] *subjectively* (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was *objectively* reasonable in light of the facts and record presented." *Id.* (emphasis in original).

This court declines to doubt the sincerity of Ms. Pitts' belief that BJCTA's denying her transfer request was unlawful—i.e., that it constituted an unlawful failure to provide reasonable accommodation. But the court does not conclude that, based on the facts and record presented, her belief was objectively reasonable.

Ms. Pitts signed an acknowledgement form that she understood the physical demands of the job, namely that the job required as an essential duty that she be able to lift, push, and pull a minimum of 50 pounds to assist passengers in wheelchairs. (Doc. 7-3). Yet mere weeks after starting her job, Ms. Pitts requested that BJCTA transfer her to a position for which she did not apply and for which BJCTA did not hire her. BJCTA was under no obligation to provide her that transfer, and this court concludes that any belief that the ADA placed such an obligation on BJCTA would have been unreasonable. So Ms. Pitts has failed to establish the first element of her *prima facie* case for her retaliation claim, and this court will GRANT BJCTA's motion for summary judgment on Ms. Pitts' retaliation claim under § 2000e-3(a).

**IV. Conclusion**

For the reasons discussed above, the court will GRANT Defendant BJCTA's motion for summary judgment on all of Ms. Pitts' claims. The court will ENTER JUDGMENT in the Defendant's favor on these claims by separate order.

**DONE** and **ORDERED** this 18th day of March, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE